JOHN G. LONSDALE and Another, Trustees of the ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellants, *v.* JAMES SPEYER, DEWITT MILLHAUSER, LOUIS J. GRUMBACH and RALPH WOLF, Respondents, Impleaded with EDWARD N. BROWN, Defendant. (Appeal No. 1.)

JOHN G. LONSDALE and Another, Trustees of the ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellants, *v.* JAMES SPEYER and Others, Defendants, Impleaded with EDWARD N. BROWN, Respondent. (Appeal No. 2.)

First Department, November 27, 1936.

*Edward S. Seidman* of counsel [*Frank A. Thompson, Robert G. Starr* and *Ivan H. Light* with him on the brief; *Wollman & Wollman*, attorneys], for the appellants.

*Henry W. Taft* of counsel [*Ralph Wolf, G. Forrest Butterworth, Jr., Edward A. Niles* and *Daniel E. Woodhull, Jr.*, with him on the brief; *Cadwalader, Wickersham & Taft*, attorneys], for the defendants-respondents Speyer & Co.

*W. Morton Carden*, for the respondent Edward N. Brown.

McAvoy, J.  The complaint alleges, in substance, that the St. Louis-San Francisco Railway Company (hereinafter referred to as " the Frisco ") was organized in the State of Missouri on August 24, 1916, and from November 1, 1916, until November 1, 1932, operated lines of railroads in the State of Missouri, in other western States and in southern States of the United States of America.

That on November 1, 1932, a receiver for it and its property was appointed by the United States District Court for the Eastern District of Missouri, Eastern Division; that in a proceeding under section 77 of the Bankruptcy Act,* the same court appointed plain-

---
* See U. S. Code, tit. 11, § 205.— [REP.

tiffs trustees of the Frisco, by an order dated October 26, 1933; that they qualified October 28, 1933, and have since been acting as such trustees.

That on June 14, 1935, the said court authorized and directed plaintiffs as such trustees to bring and prosecute this action; that the Frisco, ever since its organization, and until the appointment of a receiver, had a place of business in New York, N. Y., where its board of directors and executive committee met and transacted its business, and all the transactions and occurrences hereinafter referred to, unless otherwise stated.

That the partnership firm of Speyer & Co. was during all the times hereinafter mentioned, engaged in the business of investment banking in New York, and a member of the New York Stock Exchange; that ever since the incorporation. of the Frisco, and during the life of its predecessor, St. Louis and San Francisco Railroad Company, Speyer & Co. " was a banker for said corporations and their confidential and trusted adviser, agent and guide in all the Frisco's financial matters, stock and bond transactions, and in the matter of the acquisition and sale of stocks and bonds, and in the issue and sale of securities."

That Speyer & Co. " had and bore the closest confidential and trust relations to and with the Frisco and its predecessor corporation, and, at all the times hereinafter mentioned, dominated and controlled the determination and administration of all the financial affairs and financial policy of the Frisco and its predecessor corporation, including the matter of the acquisition of stocks and bonds and the creation of stock and bond issues and the disposition of the same;" that the Frisco became and was the successor to and of the St. Louis and San Francisco Railroad Company (hereinafter referred to as " the railroad "), under and by virtue of its reorganization in 1916; that " Speyer & Co. was one of the two reorganization managers of the railroad, who moulded the form and details of the reorganization and obtained control of the board of directors of the Frisco at that time, and control of the Frisco in all its financial affairs."

That Speyer & Co. obtained controlling powers with reference to the Frisco and retained and exercised such powers during all the times hereinafter mentioned, until the appointment of the receiver (it then mentions the names of the members of the copartnership of Speyer & Co.); that the defendant Brown is and has been a director of the Frisco since its organization, and chairman of the executive committee and of the board of directors of the Frisco since August 21, 1919; " and at all times herein mentioned was

under the domination and control of Speyer & Co., and with Speyer & Co. was, during all the times herein mentioned, in control of the financial affairs and transactions and financial policy of the Frisco."

It is further alleged that the Frisco, trusting said Speyer & Co. and said Brown implicitly, "relied during all said times upon the advice and guidance of said Speyer & Co. and said Brown in all its financial matters and affairs;" that "Speyer & Co. and Brown, having, during all the times herein set forth, the domination and control of the Frisco as aforesaid, had the power and the purpose to use the Frisco and its funds for their own benefit and gain, and did so, as hereinafter stated."

That in 1929 or 1930, Speyer & Co. and Brown did confederate and conspire together to use the Frisco funds and property and to manipulate its financial affairs for their own benefit and profit, etc.; that Speyer & Co. and Brown, in order, at the expense of the Frisco, to save Speyer & Co. or a syndicate of which Speyer & Co. were members from their disastrous investment in stock of the Gulf, Mobile and Northern Railroad Company, did wrongfully cause the Frisco to agree on December 10, 1930, to take from Speyer & Co. 25,000 shares of common stock of the Gulf, Mobile and Northern Railroad Company, and to agree to pay Speyer & Co. $38.04 per share for the stock, notwithstanding that the value and market price of said stock at said time was $13.62 per share and no more; that Speyer & Co. and Brown knew at the time that the Frisco was "short of ready money;" that on January 30, 1931, Brown and Speyer & Co. caused the Frisco to borrow from banks the sum of $1,000,000, and place the same in a "special deposit account" with Speyer & Co., and on September 30, 1932, Speyer & Co. and Brown caused this sum of money and interest credit thereon to be used to pay Speyer & Co. the sum of $1,049,978.33, which they then claimed the Frisco owed Speyer & Co. for said Gulf, Mobile and Northern stock, and such payment was so made.

That the transactions with reference to the acquisition of the Gulf, Mobile and Northern stock were perpetrated by means of fraud upon the Frisco, and its stockholders and creditors, who were at all times ignorant of the facts constituting the fraud, and that such facts were not known until discovered by the plaintiffs as such trustees as the result of proceedings instituted by them under the direction of the United States District Court in the year 1935, the Frisco being at all times under the domination and control of Speyer & Co. and Brown, as aforesaid.

That plaintiffs are entitled to a decree rescinding said transactions with reference to the acquisition by the Frisco of said Gulf, Mobile

and Northern stock, and that plaintiffs recover from the defendants the sum of $1,049,978.33, plus interest thereon at the rate of six per cent per annum from September 30, 1932.

That plaintiffs desire to do equity and hereby offer to return and will return to the defendants said 25,000 shares of Gulf, Mobile and Northern stock in connection with said rescission; that plaintiffs are entitled to a decree that the defendants as trustees for Frisco account fully to the plaintiffs for all profits and gains of every kind received by Speyer & Co. and Brown, or any of them.

" Wherefore, plaintiffs pray that this court shall, by its decree, declare that defendants herein were and are trustees for the Frisco, that said transactions with respect to the acquisition of said Gulf, Mobile and Northern common stock by the Frisco be rescinded, that the defendants be decreed to pay to plaintiffs herein the sum of $1,049,978.33, plus interest at six per cent per annum from September 30, 1932, and upon the payment thereof by the defendants to the plaintiffs, that the said 25,000 shares of said stock be delivered to the defendants.

" That the defendants as trustees account to the plaintiffs for all moneys and property and profits and/or gains received and/or in any way made by the defendants in any way arising out of said transactions and out of their acts hereinabove set forth, and/or for such other and/or further relief as may be just and proper."

Defendants, Speyer & Co. and Edward N. Brown, made motions for dismissal of this complaint, under rule 106 of the Rules of Civil Practice, upon the ground that the complaint does not state facts sufficient to constitute a cause of action against said defendants. The court below granted the defendants' motions, and, in a short opinion, indicated that the ruling was based on the conclusory nature of the pleading's allegations with respect to conspiracy, fraud, manipulation, domination and control and fiduciary relationship, without a statement of the facts on which such conclusions are based; and that the complaint cannot in essence be distinguished from the complaint in the *Mitchell* case (*Mitchell* v. *St. Louis-San Francisco Ry.*, N. Y. L. J. Nov. 30, 1932, p. 2456), which was dismissed for insufficiency. Leave was granted to serve an amended complaint within twenty days after service of a copy of the order appealed from, with notice of entry thereof.

In considering the complaint in its entirety there is a sufficient statement of facts alleged to show that the defendants stood in a fiduciary relation to the Frisco, the violation of their duties springing from that relation when they caused the Frisco to purchase from Speyer & Co. the 25,000 shares of the common stock of the Gulf, Mobile and Northern Railroad Company at $38.04 per share

when the value and the market price of the stock at that time was $13.62 per share, to the detriment of the Frisco and the benefit of the defendants. Inconsistencies in the relief sought were not grounds for demurrer to a complaint for insufficiency, under our former method of pleading, nor are they, under the present practice, grounds for a motion to dismiss the complaint for insufficiency. It may be that the proofs at the close of the trial may so shape themselves that the plaintiffs may then be called upon to elect whether they will stand on their claim for rescission or on their claim for an accounting for profits and losses.

The *Mitchell* complaint did not contain many essential and important allegations which appear in the complaint at bar. Except for the fact that the same quantity of the same stock and of approximately the same value were involved, the two complaints bear no resemblance. The decision in the *Mitchell* case has no bearing on the present complaint.

Sufficient facts are alleged in the present complaint to allege a good cause of action against Speyer & Co. and Brown for rescission or an accounting for profits and losses.

The orders should be reversed, with twenty dollars costs and disbursements, and the motions denied, with leave to the defendants-respondents to answer within twenty days after service of order with notice of entry, upon payment of said costs.

MARTIN, P. J., O'MALLEY, TOWNLEY and DORE, JJ., concur.

Orders unanimously reversed, with twenty dollars costs and disbursements, and motions denied, with leave to the defendants-respondents to answer within twenty days after service of order upon payment of said costs.